DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Washington County Common Pleas Court, Juvenile Division, judgment that awarded Washington County Children Services (WCCS) permanent custody of Douglas Riley, born September 22, 1998.
 {¶ 2} Appellant, Tony Riley, the natural father of the child, assigns the following errors:
FIRST ASSIGNMENT OF ERROR:
"THE RIGHTS OF TONY RILEY, FATHER-APPELLANT, WERE PREJUDICED DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL."
SECOND ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED IN THAT IT DID NOT BASE ITS DECISION ON CLEAR AND CONVINCING EVIDENCE THAT IT WAS IN THE BEST INTEREST OF THE CHILD, AS IS REQUIRED PURSUANT TO OHIO REVISED CODE SECTION 2151.414."
THIRD ASSIGNMENT OF ERROR:
"THE COURT ERRED IN FINDING THAT THE CHILD WAS NOT BONDED WITH HIS FATHER."
FOURTH ASSIGNMENT OF ERROR:
"THE CUSTODIAL HISTORY OF DOUGLAS DID NOT SUPPORT THE GRANTING OF PERMANENCY BY CLEAR AND CONVINCING EVIDENCE."
FIFTH ASSIGNMENT OF ERROR:
"THE COURT ERRED IN FINDING THAT THE CHILD'S NEED FOR A SECURE PERMANENT PLACEMENT NECESSITATED PERMANENCY."
 {¶ 3} On September 27, 2000, WCCS filed a complaint alleging the child to be a neglected and dependent child. The parents subsequently admitted that the child was dependent[1] and the child was allowed to remain in the parents' home.
 {¶ 4} On January 8, 2001, the child was removed from his parents' home due to "deplorable" living conditions. According to WCCS caseworker Pam McKenna: (1) food, filth, clothes, and clutter covered the floors; (2) dirty dishes and pots that still contained food were sitting in the kitchen; (3) the refrigerator contained food crumbs and stains; (4) the living room was covered with pieces of wood; (5) the bathtub contained dirty clothes; and (6) the cat litter box was filthy and overflowing. On January 31, 2001, the trial court placed the child in an aunt and uncle's temporary custody subject to WCCS's protective supervision.
 {¶ 5} On July 16, 2001, WCCS filed a motion to modify the dispositional order to temporary custody. WCCS asserted that the aunt and uncle were no longer able to care for child. On July 25, 2001, the court granted WCCS temporary custody.
 {¶ 6} Once the child was placed in WCCS's temporary custody, WCCS discovered that the child was developmentally delayed. At three years of age, he could only use one word utterances and he lacked social skills. He ate with his fingers, he could not dress himself, and he was not toilet-trained. He subsequently entered pre-school and his development significantly improved. He continued to flourish when placed in a foster home. The child's foster mother stated that once the child was in her care, he began to interact better with other children, learned more vocabulary, and became toilet-trained.
 {¶ 7} When the child had extended visits with his parents, however, his development regressed. Each time the child returned from an extended visit with his parents, the foster mother had to re-train the child how to use the toilet. After one of the visits, the child returned to the foster mother's home and tried to eat food from a garbage can. The foster mother also explained that the child became withdrawn when he realized that he was going to his parents' home for a visit.
 {¶ 8} While the child was in WCCS's protective and temporary custody, the parents attempted to maintain a clean home and did have some degree of success. Once extended visits began, however, the condition of the home deteriorated.
 {¶ 9} On June 3, 2002, during one of the child's extended visits, caseworker McKenna visited the home and found the home to be "totally unacceptable." She stated that the home was filthy and overrun with roaches. She could not enter the child's room due to the amount of clutter. A water leak had caused the ceiling in the child's bedroom to fall and the child slept in the living room because he was afraid of his bedroom. Because caseworker McKenna found the home to be "totally unacceptable," WCCS terminated the extended visit.
 {¶ 10} On July 31, 2002, WCCS filed a motion for permanent custody. On October 29, 2002, the trial court held a hearing regarding WCCS's motion. Also on October 29, 2002, the guardian filed her report and recommended that the trial court award WCCS permanent custody. The guardian noted that the parents had made some progress towards providing the child with safe housing, but that once extended visits began "it was only through intensive in-home services that any level of safety was maintained." She further stated that the parents, as far back as 1993, have been involved with children services agencies due to their failure to maintain a minimally clean home, "i.e., mounds of dirty clothing, old and new piles [of] dog feces, roaches infesting the cupboards, refrigerator, counter tops, tub, floors etc.[,] piles of trash, old and rotting food left out." She noted that she has observed the parents' home infested with roaches: "Roaches crawling all over food, in the refrigerator, in the cabinets, on the counters, the tub, the ceiling, the floor and the furniture." Even at her October 24, 2002 visit, she observed several dead roaches in the cabinets and in the kitchen. In further describing the condition of the home, she stated:
"Piles of laundry have been so out of control that [it] is impossible to distinguish clean from dirty clothing. For a period of months you could not even enter [the parents'] bedroom because the clothing and trash was piled so high you could not walk through it or over it. When the family heated with wood * * * they would leave hatchets and axes laying out. They would split the wood inside leaving debris all over the floor."
 {¶ 11} She explained that the parents are capable of maintaining a clean home, but "are usually motivated on some level by court intervention." She stated that "addressing concerns with [the parents] fell on deft [sic] ears, as upon return visits the issues would remain the same." The guardian noted that the parents have received information on nutrition and safe food storage but have not "implement[ed] the information they have received not once or twice but over and over again."
 {¶ 12} The guardian also stated that the parents have anger management problems. She described incidents when the mother was charged with domestic violence for throwing her four-year-old son, Ryan, against a wall and when the mother threw a hatchet at appellant. She further explained that appellant can be "very argumentative and verbally abusive."
 {¶ 13} The guardian further reported that the parents have not consistently attended play therapy sessions and did not attend any sessions in March, April, or May of 2002-the time when the child was in the parents' home for extended visits. During the September 13, 2002 play therapy session, the counselor observed that the child "was `not bonded'" with either parent. The guardian stated that "[t]his same concern of limited or no bonded relationship between [the child] and his biological parents has been expressed by other professionals as well." She reported:
"Even with fairly constant contact, [the child] does not appear to have made a connection with his biological parents. He does not cry for them, he does not ask for them, he does not make reference to them. During visits * * * due to the limited parenting supervision displayed by the parents, [the child] constantly seeks reassurance that either the foster parent or the caseworker is present."
 {¶ 14} She also explained that while the parents "have attempted to maintain a fairly regular visitation schedule," "[i]t has been with the hand holding of their caseworker and the foster parents that there has been any consistency of visitation." Thus, the guardian recommend that the trial court award WCCS permanent custody. She stated that she "cannot advocate spending any more time trying to reunify a child with his parents * * * [w]hen the service providers work harder at reunification than the parents."
 {¶ 15} On March 20, 2003, the trial court granted WCCS permanent custody. The trial court found that: (1) WCCS removed the child from the parents' home due to deplorable housing conditions; (2) WCCS offered or assisted the parents in receiving environmental education, early intervention parenting skills, medical cards, food stamps, transportation, education on food preparation and storage, and life skills; (3) when the child entered foster care, his speech and motor skills were delayed and he lacked social skills; (4) the child has received speech therapy, but regressed when he visited the parents' home; (5) the foster mother toilet-trained the child, but he regressed when returned home; (6) the child has adapted well to the foster home and his needs are being met; (7) the child is not bonded with his parents; (8) the parents are either not willing or not capable of providing a clean and healthy environment; and (9) the child needs a stable, nurturing environment that cannot be achieved without a grant of permanent custody. With respect to the child's best interests, the trial court found that: (1) the child is not bonded with the parents; (2) the parents have failed on a regular basis to provide a suitable, safe, healthy, and nurturing environment for the child; (3) all of his needs are being met by his foster family and he is bonded with the foster family; and (4) the parents are unable to offer the child an acceptable level of care.
 {¶ 16} Appellant filed a timely notice of appeal.
 I {¶ 17} In his first assignment of error, appellant asserts that he was denied the effective assistance of counsel. Appellant complains that his counsel "contributed to the [permanent custody] hearing in only the most minimal way." Appellant argues that his counsel failed to ask questions on cross examination, failed to present witnesses, and failed to argue and advocate appellant's point of view effectively. We disagree with appellant.
 {¶ 18} The right to counsel, guaranteed in permanent custody proceedings by R.C. 2151.352 and by Juv.R. 4, includes the right to the effective assistance of counsel. See In re Wingo (2001),143 Ohio App.3d 652, 666, 758 N.E.2d 780 (citing In re Heston (1998),129 Ohio App.3d 825, 827, 719 N.E.2d 93). "`Where the proceeding contemplates the loss of parents' `essential' and `basic' civil rights to raise their children, * * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody.'" Id. (quoting Heston).
 {¶ 19} To reverse a trial court's judgment based upon a claim of ineffective assistance, the defendant must show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. SeeStrickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Noling (2002), 98 Ohio St.3d 44, 65, 781 N.E.2d 88;State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687; see, also, Bradley, paragraph two of the syllabus (stating that counsel's performance is deficient if it falls below an objective standard of reasonable representation); State v. Peeples (1994), 94 Ohio App.3d 34, 44,640 N.E.2d 208 (stating that counsel's performance is deficient if it "raise[s] compelling questions concerning the integrity of the adversarial process"). "To establish prejudice, `the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.'"Tibbetts, 92 Ohio St.3d at 164, quoting Bradley, paragraph two of the syllabus; see, also, Strickland, 466 U.S. at 687; Noling; Bradley, paragraph three of the syllabus ("To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.").
 {¶ 20} Moreover, when a reviewing court considers an ineffective assistance of counsel claim, the reviewing court should not consider what, in hindsight, may have been a more appropriate course of action. See State v. Phillips (1995), 74 Ohio St.3d 72, 85, 656 N.E.2d 643
(stating that a reviewing court must assess the reasonableness of the defense counsel's decisions at the time they are made). Rather, the reviewing court "must be highly deferential." Strickland,466 U.S. at 689. As the Strickland Court stated, a reviewing court:
"must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'"
Id. at 689; see, also, State v. Hamelin (1988), 37 Ohio St.3d 153,524 N.E.2d 476, cert. den. (1988), 488 U.S. 975, 109 S.Ct. 515,102 L.Ed.2d 550 (stating that a properly licensed attorney is presumed competent and the appellant bears the burden to establish counsel's ineffectiveness).
 {¶ 21} Based upon our review of the record, we do not agree with appellant that trial counsel's performance was deficient. Appellant has failed to overcome the strong presumption that trial counsel acted within the realm of reasonable trial strategy and that counsel was competent. Failing to question witnesses on cross examination and choosing not to present witnesses fall within the realm of trial strategy. Moreover, appellant has not shown how counsel's alleged deficient performance affected the outcome of the proceedings. Appellant's claims that had counsel chosen a different trial strategy the result of the proceedings would have been different are based upon speculation and matters outside the record. Therefore, his claims do not demonstrate ineffective assistance of counsel. See, generally, State v. Hartman (2001),93 Ohio St.3d 274, 297, 754 N.E.2d 1150 ("`A reviewing court cannot add matter to the record before it * * * and then decide the appeal on the basis of the new matter.'" (quoting State v. Ishmail (1978),54 Ohio St.2d 402, 377 N.E.2d 500, paragraph one of the syllabus)); Statev. Grahek, Cuyahoga App. No. 81443, 2003-Ohio-2650 (concluding that ineffective assistance of counsel claim that calling other witnesses would have exonerated the defendant amounts to speculation); In reKramer, Franklin App. Nos. 02AP-1038 and 02AP-1039, 2003-Ohio-2277 (stating that claim as to what other witnesses would have testified amounts to speculation and is insufficient to establish ineffective assistance of counsel)
 {¶ 22} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II {¶ 23} In his remaining four assignments of error, appellant argues that the trial court erroneously determined that the child's best interests would be served by awarding WCCS permanent custody. Specifically, appellant asserts that the trial court erred by finding that: (1) the child was not bonded with appellant; (2) the custodial history of the child supported the decision to award WCCS permanent custody; and (3) the child's need for a legally secure permanent placement supported the decision to award WCCS permanent custody. We disagree with appellant.
 {¶ 24} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. Santosky v. Kramer (1982),455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599; In re Murray (1990),52 Ohio St.3d 155, 156, 556 N.E.2d 1169. The parent's rights, however, are not absolute. Rather, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" In reCunningham (1979), 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (quoting In reR.J.C. (Fla.App. 1974), 300 So.2d 54, 58). Thus, the state may terminate parental rights when the child's best interest demands such termination.
 {¶ 25} R.C. 2151.413 permits a public children services agency that has temporary custody of a child to file a motion requesting permanent custody of the child. In considering a motion filed pursuant to R.C. 2151.413, the trial court must follow the guidelines set forth in R.C. 2151.414.
 {¶ 26} R.C. 2151.414(A)(1) requires the trial court to hold a hearing regarding the motion for permanent custody. The primary purpose of the hearing is to allow the trial court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. See R.C. 2151.414(A)(1).
 {¶ 27} The decision that the child is an abused, neglected, or dependent child may not be re-adjudicated at the hearing. See id. Once a child is adjudicated dependent as defined in R.C. 2151.04, the best interests of the child become the trial court's primary concern when determining whether granting permanent custody is justified. Cunningham, supra.
 {¶ 28} When reviewing a motion for permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:
"(A) To provide for the care, protection, and mental and physical development of children * * *;
"* * * *
"(C) To achieve the foregoing purpose, whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety.
R.C. 2151.01.
 {¶ 29} We note that clear and convincing evidence must exist to support a permanent custody award. The Ohio Supreme Court has defined "clear and convincing evidence" as follows:
"The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."
In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23; see, also, State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. In reviewing whether the lower court's decision was based upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel, 55 Ohio St.3d at 74. If the lower court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. Id.
 {¶ 30} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273:
"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
 {¶ 31} R.C. 2151.414(B) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that one of the following conditions applies:
"(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
"(b) The child is abandoned.
"(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
"(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 32} Pursuant to the plain language of R.C. 2151.414(B)(1)(d), when a child has been in a children services agency's temporary custody for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time. See, e.g., In re Billingsley, Putnam App. Nos. 12-02-07 and 12-02-08, 2003-Ohio-344; In re Williams, Franklin App. No. 02AP-924, 2002-Ohio-7205; In re Dyal, (Aug. 9, 2001), Hocking App. No. 01CA11. Thus, when considering a permanent custody motion brought pursuant to R.C. 2151.414(B)(1)(d), the only other consideration becomes the best interests of the child. A trial court need not conduct an R.C.2151.414(B)(1)(a) analysis of whether the child cannot or should not be placed with either parent within a reasonable time. Dyal, supra.
 {¶ 33} R.C. 2151.414(D) requires the trial court to consider specific factors in determining whether the child's best interests would be served by granting the motion for permanent custody. The factors include: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.[2]
 {¶ 34} In the case at bar, we find ample competent and credible evidence to support the trial court's decision to award WCCS permanent custody of the child. At the time of the October 29, 2002 permanent custody hearing, the child had been in WCCS's temporary custody for at least twelve months of the past twenty-two consecutive months. Thus, to support an award of permanent custody, the trial court was not required to find that the child cannot or should not be placed with either parent within a reasonable time. Instead, the trial court needed only to find that the child's best interests would be served by awarding WCCS permanent custody. Based upon our review of the record, we agree with the trial court's decision that the child's best interests would be served by awarding WCCS permanent custody.
 {¶ 35} With respect to the first factor, the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child, the trial court found that the child is not bonded with his parents. While the evidence reveals that appellant loves his child, the evidence also reveals that the child is not naturally bonded to appellant. In her report, the guardian related her belief, founded upon observing the child interact with the parents, that the child is not bonded with either parent. She further observed that the child thrives while in foster care but regresses when allowed to have extended visits with his parents. While some evidence exists that the child is bonded with appellant, competent and credible evidence also exists showing that the child is not bonded with appellant. The choice between conflicting evidence remains with the trial court and we will not second-guess its findings.
 {¶ 36} Regarding the second factor, the child's wishes, as expressed directly by the child or through the child's guardian ad litem, we note that the child is too young to directly express his wishes but that the guardian recommended that the trial court award WCCS permanent custody.
 {¶ 37} With respect to the third factor, the child's custodial history, the guardian noted that the child, since he was approximately twenty-one months old, has been shuffled among households.
 {¶ 38} The fourth factor, the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency, further supports the trial court's decision to award WCCS permanent custody. The evidence reveals that the child has thrived while placed in the stable and nurturing home of the foster mother but regressed during extended visits with his parents. The evidence further shows that the parents have failed to demonstrate that they are capable of or willing to provide the child with a stable and nurturing home where the child can flourish. The guardian ad litem and the caseworker both stated that the parents, while making some progress in maintaining a clean and safe home, have failed to do so continuously. Thus, the evidence supports the trial court's finding that a legally secure permanent placement cannot be achieved without a grant of permanent custody to WCCS. Consequently, we agree with the trial court's decision to award WCCS permanent custody.
 {¶ 39} Accordingly, based upon the foregoing reasons, we overrule appellant's second, third, fourth, and fifth assignments of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Evans, P.J. Kline, J.: Concur in Judgment Opinion.
[1] WCCS dismissed the neglect allegation.
[2] R.C. 2151.414(E)(7) to (11) provide as follows:
(7) The parent has been convicted of or pleaded guilty to one of the following:
(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
(d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 [2151.41.2] of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
(10) The parent has abandoned the child.
(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 [2151.35.3] or 2151.415 [ 2151.41.5] of the Revised Code with respect to a sibling of the child.